No. 23-1687

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

IN RE BOLIVARIAN REPUBLIC OF VENEZUELA;
PDV HOLDING, INC.; PETRÓLEOS DE VENEZUELA, S.A.;
AND CITGO PETROLEUM CORP.,

*Petitioners.*

On Petition For Writ Of Mandamus From
The United States District Court For The District of Delaware
No. 1:17-mc-151-LPS, Judge Leonard P. Stark

### CRYSTALLEX'S OPPOSITION
### TO MOTION FOR A STAY

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, N.Y. 10166
(212) 351-4000

Miguel A. Estrada
  *Counsel of Record*
Lucas C. Townsend
Matthew S. Rozen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Respondent Crystallex International Corp.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Crystallex International Corp. hereby discloses that it has no parent corporations, and no publicly held company owns 10% or more of its outstanding membership units.  No publicly owned company not a party to this appeal has a financial interest in the outcome of this litigation.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................4

ARGUMENT ...............................................................................................8

    I.   Venezuela Has No Likelihood Of Success On The Merits ........................8

        A.  Venezuela Cannot Show Clear And Indisputable Error ......................9

        B.  Venezuela Cannot Meet Mandamus's Procedural Requirements.......20

    II.  The Equities Weigh Heavily Against A Stay ...........................................22

CONCLUSION .........................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Parkland Sch. Dist.*,
   230 F. App'x 189 (3d Cir. 2007) ........................................................12

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   2017 WL 1712516 (D. Mass. May 2, 2017)........................................15

*In re Brooks*,
   383 F.3d 1036 (D.C. Cir. 2004)..........................................................13

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..............................................................................15

*Cipollone v. Liggett Grp., Inc.*,
   802 F.2d 658 (3d Cir. 1986) ...............................................................16

*Cirba Inc. v. VMware, Inc.*,
   2022 WL 606655 (D. Del. Jan. 7, 2022) .............................19, 21, 22

*In re Citizens Bank, N.A.*,
   15 F.4th 607 (3d Cir. 2021) ..................................................................8

*City of Pittsburgh v. Simmons*,
   729 F.2d 953 (3d Cir. 1984) ...............................................................20

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   760 F. App'x 1 (D.C. Cir. 2019)...........................................................4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) .............................................4, 14, 21, 23

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenluramine)
Prods. Liab. Litig.*,
   573 F. App'x 186 (3d Cir. 2014) ........................................................15

*Edgar v. K.L.*,
   93 F.3d 256 (7th Cir. 1996) ...............................................................17

*Hanover Potato Prods., Inc. v. Shalala*,
  989 F.2d 123 (3d Cir. 1993) ....................................................................9

*In re Howmedica Osteonics Corp.*,
  867 F.3d 390 (3d Cir. 2017) ..............................................................9, 21

*In re Kensington Int'l Ltd.*,
  368 F.3d 289 (3d Cir. 2004) ......................................9, 12, 13, 15, 17

*Liteky v. United States*,
  510 U.S. 540 (1994).............................................................................14

*In re Nissim Corp.*,
  428 F. App'x 981 (Fed. Cir. 2011) ......................................................21

*Nken v. Holder*,
  556 U.S. 418 (2009)...............................................................................8

*Plechner v. Widener Coll., Inc.*,
  569 F.2d 1250 (3d Cir. 1977) ..............................................................16

*Rios v. Enter. Ass'n Steamfitters*,
  860 F.2d 1168 (2d Cir. 1988) ..............................................................20

*State Farm Mut. Auto. Ins. Co. v.*
  *Am. Rehab & Physical Therapy, Inc.*,
  376 F. App'x 182 (3d Cir. 2010) .........................................................22

*In re Sch. Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992) .............................20, 21, 22

*Stone Hedge Props. v. Phoenix Cap. Corp.*,
  71 F. App'x 138 (3d Cir. 2003) ...........................................................17

*United States v. Holland*,
  519 F.3d 909 (9th Cir. 2008) ..............................................................12

*United States v. Martorano*,
  866 F.2d 62 (3d Cir. 1989) ..................................................................12

*United States v. Sandini*,
  888 F.2d 300 (3d Cir. 1989) ................................................................13

*United States v. Thomas*,
   2022 WL 1482028 (3d Cir. Jan. 6, 2022) ..........................................................20

**Statutes**

28 U.S.C. § 455 .................................................................................................12, 20

28 U.S.C. § 455(a) ...................................................................7, 12, 13, 15, 17, 18

28 U.S.C. § 455(b) ..............................................................................................17

28 U.S.C. § 455(b)(1) ...............................................................................7, 16, 18

28 U.S.C. § 1292(b) ............................................................................................21

**Rules**

Federal Rule of Appellate Procedure 8(a) ............................................................8

Federal Rule of Civil Procedure 53 ....................................................................20

Federal Rule of Civil Procedure 53(a)(2) ...........................................................20

Federal Rule of Civil Procedure 53(b)(2)(B) .................................................15, 20

## INTRODUCTION

This Court is now well acquainted with Venezuela's obstructive tactics to avoid paying the roughly $1 billion it still owes Crystallex International Corp. ("Crystallex") on a fully affirmed and unappealable federal judgment. In 2018, Crystallex attached Venezuela's Delaware shares of PDV Holding, Inc. ("PDVH"), the holding company through which Venezuela owns CITGO Petroleum and profits from United States markets. Since then, Venezuela has filed *nine* interlocutory appeals or mandamus petitions and *sixteen* requests for stays or equivalent relief trying to stop all progress toward a judicial sale of the shares. This Court affirmed Crystallex's attachment and dismissed all of Venezuela's other attempts to appeal prior to a final sale order. But that has not stopped Venezuela and its army of lawyers from continually raising bogus objections in the district court designed to create even more appeals.

Venezuela's latest mandamus petition follows from an unsuccessful attempt to disqualify the district court's Special Master (and thus stop progress toward a sale) based on a long-contemplated meeting that the Special Master had with Executive Branch officials in January 2023 to ascertain the government's views on the sale process. The meeting occurred largely at Venezuela's behest, because Venezuela insists that sanctions imposed by the Treasury Department's Office of Foreign Assets Control ("OFAC") prevent a contingent auction of the attached shares without

OFAC approval.  On the eve of the meeting, Venezuela filed a belated request to attend the meeting; the district court denied that request as untimely and the meeting occurred as scheduled.  Thereafter, for the first time, Venezuela moved to disqualify the Special Master for what Venezuela assumed to be his *ex parte* "advocacy" on behalf of Crystallex at the meeting.

After full briefing and a lengthy hearing, the district court denied Venezuela's disqualification motion on numerous independent grounds, including factual findings that Venezuela does not even challenge as clearly erroneous in its mandamus petition.  The Special Master confirmed he never advocated for any particular OFAC policy, but merely asked the government to clarify its position.  Venezuela conceded that seeking such clarification would not "raise an issue."  App. 23a:9-12.  OFAC did not even attend this meeting with other government officials.  The district court thus denied the disqualification motion as meritless, untimely, and waived, concluding that Venezuela had brought the motion and manipulated its timing to "further delay" and hinder these proceedings—including holding back arguments in a "strategic" effort to disqualify the Special Master and potentially the district court judge.  App. 508a.

Having failed in phase one of its delay strategy, Venezuela has moved to phase two: seeking review (again) by mandamus and yet another stay.  But a stay is un-

warranted because Venezuela's mandamus petition has no prospect of success. Venezuela's past predictions of likelihood of success have proven false, and to date *none* of the three arbitrators, twenty-one judges, and nine Supreme Court Justices that have considered Venezuela's arguments has ever found them meritorious. ECF No. 549, at 4. Here, the district court identified multiple independently sufficient, iron-clad reasons for denying disqualification—including that Venezuela's arguments are untimely, waived, legally meritless, and based on false factual premises. This Court reviews the district court's dispositive fact findings deferentially, and Venezuela identifies no legal error. Nor is mandamus even an appropriate vehicle to review these rulings because later appeal provides an adequate remedy. The narrow rule permitting mandamus to review *judges*' refusal to *self*-disqualify has no application to an undisputedly neutral judge's decision declining to disqualify a *special master*. And even where mandamus is legally permissible, it remains a discretionary remedy that would be inappropriate here given Venezuela's strategic misconduct.

The other equities also weigh strongly against a stay. Any harm to Venezuela is reparable on appeal, and even if this Court denies a stay, Venezuela remains free to halt district court proceedings either by paying its debts or posting a supersedeas bond—both of which it clearly has the wherewithal to do given the extraordinary level of profits generated by CITGO. By contrast, a stay would seriously harm both

Crystallex—by obstructing and jeopardizing these judgment-enforcement proceedings—and the public interest in timely enforcement of judgments. Indeed, that is the whole point of Venezuela's "strategic" ploy to hinder and delay these proceedings. App. 508a.

The Court should deny a stay. Given Venezuela's pattern of abusive litigation tactics and obstructive behavior, the Court also should consider appropriate measures to discourage such behavior in the future.

## BACKGROUND

Crystallex brought this long-running proceeding to enforce a now-fully-affirmed judgment confirming an arbitral award against Venezuela for the brazen theft of Crystallex's mining interests in 2011. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 2-3 (D.C. Cir. 2019). In 2019, this Court affirmed the attachment of Venezuela's Delaware shares of PDVH (CITGO's indirect owner) for sale to satisfy that judgment. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132 (3d Cir. 2019).

Since May 2020, the district court has been designing and preparing for a sale process calculated—at Venezuela's urging—to "'maximize the sales price obtained'" for Venezuela's benefit, beyond what Crystallex's debt requires. ECF No. 244, at 3. In April 2021, the district court appointed Venezuela's preferred candidate

as Special Master and tasked him with designing that sale process. ECF No. 258, 277.

Throughout, Venezuela has filed serial objections to the Special Master's proposed sale procedures and implementation of the court's orders. ECF No. 513, at 3-4. Those objections include a prior, unsuccessful request to disqualify the Special Master based on his financial advisor's pay structure. App. 301a-311a. This Court dismissed Venezuela's appeal on that issue as premature, Doc. 45-1, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 22-1606 (3d Cir. Aug. 3, 2022), and denied Venezuela's request for permissive appeal, Doc. 28, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 22-8024 (3d Cir. July 26, 2022).

Venezuela's most vociferous objections have focused on OFAC's role in the sale process. Federal sanctions regulations require an OFAC license for the ultimate execution of a sale, but not, the district court has concluded, for the process leading up to it. App. 311a-339a. Even so, Venezuela expressed concerns that sanctions could deter bidders and depress the sales price without OFAC's "guidance" to reassure the market. App. 493a. To address these concerns, the court authorized the Special Master to retain special "OFAC counsel," App. 498a ¶ 13, and repeatedly directed him to solicit OFAC's views and guidance for the benefit of potential bidders, *e.g.*, App. 267a ¶ 3, 316a, 340a. The Special Master has thus communicated

and met with OFAC *ex parte* since May 2021, with Venezuela's knowledge and consent.  App. 219a-220a; ECF No. 513, at 7-9.

Until this past January, Venezuela never objected to these communications' *ex parte* character.  Venezuela briefly objected in August 2021 that the Special Master was supposedly planning to "[l]obby" and "advocate" on behalf of a party.  App. 404a.  But Venezuela never suggested that the meetings themselves required disqualification—even as Venezuela argued in the same filing for disqualification on other grounds, *supra*, at 5.  The Special Master responded that he had neither "lobbied" for any party nor "proposed" to do so, but had simply asked the government to "clarify its position."  App. 359a.  The district court rejected Venezuela's objection.  App. 300a-301a, 316a, 339a-340a.

In October 2022, the court entered a sale procedures order.  App. 257a-294a.  As an initial step, the order directed the Special Master to "solicit and attempt to gain clarity" regarding OFAC's views of the sale process so that the Special Master could consider that "guidance" and recommend to the court whether and when to begin preparing for the pre-sale marketing process.  App. 267a ¶ 3.  The Special Master confirmed in October 2022 that he "does not intend to include the Venezuela Parties at such meeting" with OFAC.  App. 296a n.2.  Venezuela did not object.

On December 28, the Special Master advised Venezuela that he planned to meet with OFAC "in January."  App. 255a.  Venezuela waited until December 30 to

ask the Special Master for the meeting date (January 12, 2023), waited until January 3 to ask the Special Master if it could attend (no), and then waited until January 9—"just three days" before the meeting, App. 218a-219a ¶ 1—to move the district court for leave to attend, App. 240a. In that motion, Venezuela never stated that the Special Master would have to be disqualified if the meeting went forward without Venezuela. And though Venezuela now relies mainly on 28 U.S.C. § 455(a) and (b)(1) to support disqualification, its motion mentioned § 455(a) only in string cites, App. 243a, 249a, and never mentioned § 455(b)(1). The Special Master and Crystallex opposed the motion as untimely, waived, and meritless, and the district court denied the motion for "essentially all of th[ose] reasons." App. 218a ¶ 1.

After the meeting, Venezuela seized the opportunity to seek to disqualify the Special Master based on its suspicion he had engaged in "improper *ex parte* communication and advocacy in a January 12, 202[3], meeting with OFAC." App. 205a. At oral argument, however, the Special Master revealed that (1) the meeting was attended only by DOJ, State, and non-OFAC Treasury officials—not OFAC, App. 12a:8-12, 75a:13-18; (2) the Special Master has never advocated "for a change in policy," App. 39a:9-12; *see* App. 40a:25-41a:12, 47a:2-9, 76a:12-77a:7; and (3) instead, at the meeting, the Special Master merely encouraged the government to provide "guidance," App. 45a:4-12. Venezuela also conceded that encouraging the government to clarify "DOJ's view"—precisely what the Special Master did—would

7

not "raise an issue" of disqualification.  App. 23a:9-12; *see* App. 25a:4-26a:3.  And Venezuela expressly consented to the April 30 deadline for the Special Master's report, App. 17a:12-16, that Venezuela now seeks to stay, Mot. 8.

The district court denied disqualification.  App. 104a-126a, 502a-510a.  Venezuela moved the district court for a stay, ECF No. 540, but did not seek expedited briefing.  Venezuela then moved this Court for a stay without waiting for the district court to rule as Federal Rule of Appellate Procedure 8(a) requires.

## ARGUMENT

A motion for stay pending appeal turns on "four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  This same standard applies to stays pending mandamus petitions.  *In re Citizens Bank, N.A.*, 15 F.4th 607, 615 (3d Cir. 2021).  None of those factors supports a stay.

## I.    Venezuela Has No Likelihood Of Success On The Merits

Venezuela cannot make the required "'strong showing that [it] is likely to succeed on the merits,'" *Nken*, 556 U.S. at 426, because the district court's decision is

unimpeachable, and this Court's review is premature.  Mandamus is an "'extraordinary' remedy," and requires proof of: "(1) a clear and indisputable 'abuse of discretion'" or "'error of law,' (2) 'a lack of an alternate avenue for adequate relief,' and (3) 'a likelihood of irreparable injury.'"  *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017).  None of these requirements is met.

### A.      Venezuela Cannot Show Clear And Indisputable Error

Venezuela comes nowhere near showing the "clear and indisputable" error required for mandamus.  *Howmedica*, 867 F.3d at 401.  Relying on out-of-circuit cases, Venezuela pins its hopes on this Court essentially deciding *de novo* whether the Special Master's "'impartiality might reasonably be questioned.'"  Mot. 9.  But on a mandamus petition, this Court reviews the district court's recusal decision for "abuse of discretion."  *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004).  Under "abuse of discretion review," this Court "examine[s] the district court's factual findings for clear error."  *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).  Since Venezuela does not even attempt to show clear factual error, it is stuck with the district court's fact findings—including that: (1) all the Special Master did at the meeting was seek "clarity" regarding the government's views (without "advocat[ing]" for any "change"), App. 503a-505a; and (2) Vene-

zuela "strategic[ally]" brought and manipulated the timing of its objections to "further delay these already delayed proceedings," App. 508a. On those facts, Venezuela's arguments fail for multiple reasons.

*First*, the key premise of Venezuela's "advocacy" objection has been proven false. Venezuela based its disqualification motion on an admitted "assumption" about what happened at the meeting—an assumption that Venezuela admitted would "change the complexion of this motion" if disproved. App. 19a:14-16. Specifically, Venezuela assumed that "the Special Master met with OFAC *ex parte* on January 12" and "advocate[d] to the United States Government to revise its foreign policy positions." App. 206a-207a. But the Special Master confirmed that he never argued "for a change in U.S. foreign policy" or "for Crystallex to be granted a license," ECF No. 544, at 2—the only things Venezuela deems improper "advocacy," App. 18a:17-30a:3. Instead, OFAC did not even attend the meeting, *supra*, at 7, and the Special Master merely sought the government's "guidance," App. 45a:4-12—just as he has since May 2021, App. 219a, 359a—which Venezuela conceded would not "raise an issue," App. 23a:9-12.

Venezuela is thus left scrambling to rewrite its objection in this Court using a handful of out-of-context snippets from the Special Master's pre-meeting statements about what he hoped to accomplish. Mot. 2-3, 7-8, 10-12. But those statements either do not mean what Venezuela says, or do not reflect what ultimately happened.

For example, when the Special Master previously planned to offer his "perspective on why OFAC cooperation with the Court's order is appropriate," he explained in the same sentence that the only "cooperation" he sought was for the government to disclose "whether OFAC will ... authorize the sale," App. 237a—not, as Venezuela claims, for the Executive Branch to change "'U.S. foreign policy,'" Mot. 2, 11-12. And Venezuela's bad-faith tactics throughout these proceedings justify the Special Master's legitimate concern that "a foreign government-debtor listening in" would "impair" his efforts to ascertain the government's views, App. 237a—despite Venezuela's strenuous efforts to misconstrue these words, Mot. 2-3, 7, 10, 12.

Similarly, the Special Master's innocuous reference at the hearing to "the benefits of the orderly [sale] process" obviously was not improper advocacy, as confirmed by his statement in the next breath that he sought only "clarity on the U.S. government's position." App. 12a:18-25; *contra* Mot. 10. Venezuela expressly declined to seek an evidentiary hearing on what happened at the meeting, App. 9a:4-8, 148a, and the court was not persuaded that Venezuela's isolated quotations controverted the Special Master's account of what occurred, App. 504a-505a. The court instead found "no evidence" that the Special Master "advocated for a change in U.S. foreign policy or advocated for Crystallex to be granted a license," App. 503a, and that finding was not clear error.

11

The court also properly rejected Venezuela's mischaracterization of the government's position, which relied on two "outdated" statements of the government's views "at that time," which were "expressly time bound" and "without prejudice" to later changes.  App. 505a.  That factual finding, too, removes any foundation for Venezuela's argument that the Special Master tried to "change" foreign policy.

Venezuela tries to cast the meeting's *ex parte* basis as itself sufficient reason to "'suspect'" impropriety.  Mot. 12-13.  Venezuela then argues that this "suspicio[n]" alone "would cause a reasonable observer to question [the Special Master's] impartiality," triggering disqualification under § 455(a).  Mot. 13.  But that is not how § 455 works.  "[S]ince the test for recusal is a reasonable person one, a movant must supply some objective facts that support his position, not mere speculation." *United States v. Martorano*, 866 F.2d 62, 68 (3d Cir. 1989).  A "'reasonable person' is not someone who is 'hypersensitive or unduly suspicious,'" and recusal is not required "'upon the merest unsubstantiated suggestion of personal bias.'" *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).  This Court has thus rejected disqualification where "allegations of bias amount[ed] to no more than speculation"—*e.g.*, where there was "no evidence that [the judge] discussed" improper topics *ex parte*.  *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 193 (3d Cir. 2007).

In Venezuela's cited cases, by contrast, the factual basis for disqualification was "prove[n]" on "'an adequately developed evidentiary record,'" *Kensington*, 368

F.3d at 293, 305, so the court could judge impartiality "apprised of all the facts," *In re Brooks*, 383 F.3d 1036, 1046 (D.C. Cir. 2004). Having shown no similar evidence of disqualifying conduct, Venezuela cannot bootstrap that failure of proof into a likelihood of success.[1]

*Second*, even on Venezuela's assumed facts, Venezuela's advocacy objection fails as a matter of law. As the Special Master explained and the court "agree[d]," App. 218a ¶ 1, "[t]here is no principle of judicial ethics requiring [a] Special Master to not take actions, or even advocate, to enforce [a federal] judgment," App. 235a; *contra* Mot. 9-11. The Special Master's impartiality therefore cannot "reasonably be questioned" on this basis. 28 U.S.C. § 455(a).

Venezuela finds it objectionable that the Special Master shares the district court's understanding that sanctions regulations permit pre-sale preparations. Mot. 11-12. But that issue has been litigated extensively in this proceeding, *see* ECF No. 513, at 17—including with government input, ECF No. 212—and the court long ago ruled against Venezuela's position, *supra*, at 5. Taking a position on that fully litigated issue cannot create the appearance of partiality because that is precisely the judiciary's role. Indeed, "judicial rulings alone almost never constitute a valid basis

---

[1]    Venezuela also attempts to manufacture controversy out of its own prior "accus[ations]," Mot. 10-11, but "arguments of counsel" are "not evidence," *United States v. Sandini*, 888 F.2d 300, 311 (3d Cir. 1989).

for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Although "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person," still "the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." *Id*. at 550-51.

Nor is it improper advocacy for the Special Master to execute his assigned task of ensuring enforcement of federal court judgments, in which Venezuela recognizes the judiciary's legitimate "interest." App. 28a:15-20.  This Court observed that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Crystallex*, 932 F.3d at 149.  The district court has thus "expressly contemplated and authorized" the Special Master to "'advocate' ... for the enforcement of the [c]ourt's orders, consistent with his previous efforts, ... in aid of allowing the [c]ourt to fulfill its judicial duties." App. 219a ¶ 2 n.2.  Advocating for the rule of law is not advocacy for any party, and no "ethical" principle requires a court to treat with equal solicitude its own final judgments and those who, preferring endless vexatious litigation, choose to defy those lawful judgments.

*Third*, it is not improper for the Special Master to meet *ex parte* with government officials to carry out the district court's orders.  App. 509a-510a.  Even for a

judge, this Court's precedent expressly "do[es] not hold that *ex parte* communications alone ... require recusal" under § 455(a).  *Kensington*, 368 F.3d at 305.  And Federal Rule of Civil Procedure 53(b)(2)(B) expressly allows judges to permit Special Masters to "communicate ex parte."  Although the rule refers to communications with the court or parties, Mot. 14, courts have interpreted the permission to extend to third parties in appropriate circumstances.  *Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 2017 WL 1712516, at *2 (D. Mass. May 2, 2017).

Additionally, federal courts have broad "'inherent power to provide themselves with appropriate instruments required for the performance of their duties,' including the power to 'appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause.'"  *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenluramine) Prods. Liab. Litig.*, 573 F. App'x 186, 189 (3d Cir. 2014).  Where, as here, no rule or statute clearly forbids the exercise of that traditional authority, the Court should not "'lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).  The district court lawfully exercised that authority to direct the Special Master's activities in aid of these proceedings, and those activities cannot provoke a reasonable question of partiality under § 455(a).

Nor has Venezuela ever identified any "disputed evidentiary facts" that the Special Master could possibly have learned in violation of § 455(b)(1). He could not have learned OFAC's position when OFAC did not even attend the meeting. *Supra*, at 7. And the government's legal position is not an evidentiary fact. "[K]nowledge about *legal issues* is not a ground for recusal." *Cipollone v. Liggett Grp., Inc.*, 802 F.2d 658, 659 (3d Cir. 1986) (emphasis added). Instead, § 455(b)(1) "is directed toward knowledge of disputed evidentiary facts"—"that is, matters underlying the cause of action," *Plechner v. Widener Coll., Inc.*, 569 F.2d 1250, 1263 (3d Cir. 1977)—not personal knowledge of "any 'information'" generally, as Venezuela suggests, Mot. 14. Because any unofficial statements by OFAC are not relevant to any disputed factual question being litigated, § 455(b)(1) cannot apply. Indeed, Venezuela itself has taken the position that unofficial OFAC statements could not "resolve any of the legal obstacles" concerning sanctions. App. 351a:5-7.

Further, upcoming events will shortly moot Venezuela's objection. The Special Master confirmed after Venezuela filed its stay motion that OFAC subsequently provided "input" on its position that will be incorporated into his upcoming report, which the parties will then "have the opportunity to review and respond to." ECF No. 547, at 2. The point is not that the report "cure[s]" any impropriety, Mot. 15, but that what happened at the meeting is not itself an evidentiary fact because no decision will be based on it, as Venezuela has acknowledged, App. 510a; *see* App.

351a:5-7.  To the extent OFAC's position is relevant, it will be discerned from OFAC's subsequent input, not the Special Master's say-so.

*Fourth*, Venezuela objected "far too late."  App. 218a.  "[P]arties seeking disqualification under § 455(a) should do so in a timely manner," because the "'judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.'"  *Kensington*, 368 F.3d at 312; *see also Stone Hedge Props. v. Phoenix Cap. Corp.*, 71 F. App'x 138, 141 (3d Cir. 2003) (Section 455(b) objections also must be "timel[y]").  Here, the district court ruled Venezuela's objections were both untimely and waived, based in part on its factual finding that the entire timing of Venezuela's objections was "strategic."  App. 508a.  That finding is reviewed deferentially, *supra*, at 9, and Venezuela has not shown clear error on this undisputed record.

Venezuela has known since 2021 about the Special Master's *ex parte* communications with OFAC and not only failed to object, but affirmatively "***consented***."  App. 219a ¶ 3; *see*, *e.g.*, ECF No. 269, at 1 (endorsing "seeking guidance" from OFAC).  Venezuela suggests that consent to prior meetings did not waive objections to "*this* one," Mot. 17-18, but a party can escape its prior acquiescence only where new facts are "discovered later," *Kensington*, 368 F.3d at 307 (citing *Edgar v. K.L.*, 93 F.3d 256, 257-58 (7th Cir. 1996)).  Here, the meetings were always *ex parte*, and

17

Venezuela has not shown anything materially different happened in January.  App. 504a, 509a.  Venezuela's suspicion that something different *could* happen, *supra*, at 12, could apply to any *ex parte* meeting—amounting to an untimely blanket objection to *ex parte* meetings in general (what Venezuela consented to since 2021).

Regardless, Venezuela also knew since October 2022 that *this* meeting would be *ex parte* but inexcusably did not object until days beforehand.  *Supra*, at 6-7. Even after the Special Master again confirmed the meeting's *ex parte* basis on December 30, Venezuela waited 10 days to file a motion, leaving only 3 days for briefing and decision and thus threatening to scuttle the meeting.  *Supra*, at 6-7.  Even then, Venezuela held § 455(b)(1) in reserve, cited § 455(a) only in string cites, and said nothing about disqualification.  *Supra*, at 7.  Venezuela then sought recusal of only the Special Master, but later asserted, when asked, that if the Special Master had talked to the judge about what happened at the meeting, the judge would also have to recuse—something neither of Venezuela's motions had hinted at.  App. 160a-163a.

On these facts, the court reasonably concluded Venezuela acted strategically to delay proceedings, including by trying to set up disqualification of the Special Master or "potentially" the judge.  App. 508a.  Venezuela disputes that these facts make its objection untimely, Mot. 15-18, but identifies no basis for questioning the

court's premise that these facts show deliberate strategy to undermine the sale process. Accepting that premise, there can be little doubt that Venezuela's strategic delay warranted finding untimeliness.

Venezuela's advocacy objection is also untimely because it consented since 2021 to activities not "materially different" from the challenged conduct in 2023. App. 505a. Venezuela did not learn anything new from the Special Master's use of the word "advocacy" on January 3, *contra* Mot. 15, as he had used similar language going back to 2021, while clarifying that he would never advocate for any "party," *supra*, at 6. Indeed, Venezuela "waived it as a basis for disqualification" in 2021 by failing to raise that argument when seeking disqualification on other grounds. *Cirba Inc. v. VMware, Inc.*, 2022 WL 606655, at *4 (D. Del. Jan. 7, 2022); *see supra*, at 5. When asked whether it objected to the Special Master communicating *ex parte* with OFAC, Venezuela responded that such communication was pointless because it "doesn't resolve any of the legal obstacles"—but failed to object to the communications' *ex parte* nature or argue they would be disqualifying, even when called to the podium and pressed on the issue by the court. App. 349a:25-351a:7. Venezuela's opportunistic inconsistency further the supports the court's finding of strategic delay.

**B.    Venezuela Cannot Meet Mandamus's Procedural Requirements**

Venezuela's petition is also likely to fail because mandamus is the wrong vehicle for review.  Ordinarily, a "refusal to recuse is reviewable only after final judgment," and "mandamus will not lie," *City of Pittsburgh v. Simmons*, 729 F.2d 953, 954 (3d Cir. 1984), because later appeal suffices to "cure" any harm to "fairness to the litigants," *In re Sch. Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992).

*School Asbestos* recognized a narrow exception that "sometimes" permits mandamus "to require a *judge's* recusal under 28 U.S.C. § 455."  *United States v. Thomas*, 2022 WL 1482028, at *2 (3d Cir. Jan. 6, 2022) (emphasis added).  But § 455 by its terms "do[es] not cover special masters," *Rios v. Enter. Ass'n Steamfitters*, 860 F.2d 1168, 1173 (2d Cir. 1988), and Congress deliberately "chose to expand [§ 455's] coverage to include magistrates … but not special masters," *id.* at 1174, so "Congress's" heightened "concern for the public's confidence in the judiciary"—the basis for mandamus review—is not implicated by special masters, *Sch. Asbestos*, 977 F.2d at 776-78.  The judiciary voluntarily subjected special masters to § 455's grounds for recusal in Rule 53(a)(2), but there is no indication it did so because it thought the public's very confidence in the judiciary was at stake.  On the contrary, Rule 53 makes clear the judiciary viewed the stakes as much lower.  Rule 53(a)(2) permits parties to waive any grounds for recusal, and Rule 53(b)(2)(B) expressly permits *ex parte* communications—confirming it aims to protect litigants,

not public confidence. *See Cirba*, 2022 WL 606655, at *6 n.13 (citing advisory committee notes). Further, unlike judicial disqualification, special master disqualification does not remove "statutory power" to hear a case because the judge retains the "'judicial power.'" *Sch. Asbestos*, 977 F.2d at 778. And unlike a judge's *self*-recusal decision, recusal of a master is decided by a neutral party (the court), which suffices to protect "public confidence" until a later appeal. *Id*. at 776. There is thus no need for interlocutory review, and "whether the special master [is] impartial" must be raised "on appeal." *In re Nissim Corp.*, 428 F. App'x 981, 983 (Fed. Cir. 2011).

Legal deficiencies aside, moreover, this Court is likely to deny mandamus "in the exercise of [its] discretion," *Howmedica*, 867 F.3d at 401, given Venezuela's history of strategic delay and abusing the judicial system. This Court has affirmed that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations," *Crystallex*, 932 F.3d at 149, and has denied Venezuela relief many times in this case, including by exercising its discretion last year to deny permission under 28 U.S.C. § 1292(b) to appeal the denial of Venezuela's last attempt to disqualify the Special Master, Doc. 28, No. 22-8024 (3d Cir. July 26, 2022). Venezuela's latest maneuver is even less deserving of or likely to garner a favorable exercise of this Court's discretion now that the district court has found that Venezuela's

21

disqualification motion was "tactical and designed with at least a partial goal of further delaying these proceedings."  App. 508a.

## II.   The Equities Weigh Heavily Against A Stay

All the equitable stay factors weigh against relief.  As explained *supra*, at 20-21, Venezuela cannot establish irreparable harm "'[b]ecause a master is not a public judicial officer,'" *Cirba*, 2022 WL 606655, at *6 n.13, and Venezuela's disqualification argument raises only private, "individual" injuries "cur[able]" on appeal, not any "additional, separable harm to public confidence" in the judiciary as required for mandamus, *Sch. Asbestos*, 977 F.2d at 776.  Further, even if irreparable harm *were* threatened by denial of a discretionary stay, Venezuela is clearly capable of avoiding it by posting a bond, given CITGO's extraordinary profits.  *See* Mot. 21.

By contrast, a stay threatens serious harm to Crystallex, which has diligently enforced its rights for over a decade, while ever more creditors have obtained judgments against Venezuela and PDVSA, threatening more litigation, *see* ECF No. 507; No. 23-1117 (3d Cir.).  The mere accrual of post-judgment interest, Mot. 21, cannot protect Crystallex from resulting litigation costs or risk that Venezuela will exploit any delay to invent further obstacles to a sale.

Further, "[t]he public has an interest in the enforcement of judgments," *State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3d Cir. 2010), and "[e]ach day that Crystallex does not recover on its judgment"

is "an affront to the United States judicial system," ECF No. 234, at 38.  This Court should not countenance Venezuela's latest attempt to abuse judicial remedies to "avoi[d] its obligations."  *Crystallex*, 932 F.3d at 149.

## CONCLUSION

Crystallex respectfully requests that the Court deny Venezuela's stay motion. Given Venezuela's pattern of abusive litigation tactics and serial interlocutory appeals, the Court also should consider appropriate measures to discourage such behavior in the future.

April 24, 2023

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, N.Y. 10166
(212) 351-4000

Respectfully submitted,

*/s/ Miguel A. Estrada*
Miguel A. Estrada
   *Counsel of Record*
Lucas C. Townsend
Matthew S. Rozen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Respondent Crystallex International Corp.*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this Opposition is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

April 24, 2023

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

**CERTIFICATE OF COMPLIANCE**

1.  This Opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) because it contains 5,200 words, excluding the parts of the Opposition exempted by Federal Rule of Appellate Procedure 32(f).

2.  This Opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

3.  This Opposition complies with this Court's Rule 31.1(c) because the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses.

April 24, 2023

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2023, I caused the foregoing Opposition to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

April 24, 2023

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500