No. 23-1687

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

IN RE BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A.; CITGO PETROLEUM CORPORATION; and PDV HOLDING, INC.,

*Petitioners.*

**Petition for a Writ of Mandamus to the United States District Court for the District of Delaware**

**REPLY IN SUPPORT OF MOTION FOR A STAY PENDING RESOLUTION OF THE PETITION FOR A WRIT OF MANDAMUS**

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, DC  20001
(202) 220-1100

*Counsel for Bolivarian Republic of Venezuela*

Hashim M. Mooppan
  *Counsel of Record*
Gregory M. Shumaker
Brinton Lucas
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
hmmooppan@jonesday.com

*Counsel for CITGO Petroleum Corporation and PDV Holding, Inc.*

(additional counsel listed on inside cover)

| | |
|---|---|
| Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Ave.<br>New York, NY  10178<br>(212) 696-6000<br><br>*Counsel for Petróleos de Venezuela, S.A.* | Nathan P. Eimer<br>Daniel D. Birk<br>Gregory M. Schweizer<br>Emily Sullivan<br>EIMER STAHL LLP<br>224 South Michigan Ave., Suite 1100<br>Chicago, IL  60605<br>(312) 660-7600<br><br>Michael J. Gottlieb<br>Samuel G. Hall<br>WILKIE FARR & GALLAGHER LLP<br>1875 K St. NW<br>Washington, DC  20006<br>(202) 303-1000<br><br>*Counsel for CITGO Petroleum Corporation and PDV Holding, Inc.* |

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit L.A.R. 26.1, Petitioners Petróleos de Venezuela, S.A. (PDVSA), PDV Holding, Inc. (PDVH), and CITGO Petroleum Corporation (CITGO) hereby disclose as follows:

PDVSA is a Venezuelan corporation that is wholly owned by the Venezuelan government, Petitioner Bolivarian Republic of Venezuela (the Republic). PDVH is a wholly owned subsidiary of PDVSA. CITGO is a wholly owned subsidiary of CITGO Holding, Inc., which is a wholly owned subsidiary of PDVH.

## TABLE OF CONTENTS

                                                                                               **Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

I.  THE VPS AT THE VERY LEAST HAVE A REASONABLE CHANCE OF OBTAINING MANDAMUS RELIEF .........................................2

II.  THE EQUITIES STRONGLY FAVOR A STAY ............................................10

CONCLUSION .......................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Primerica Holdings, Inc.*,
    10 F.3d 155 (3d Cir. 1993) ....................................................................... 7

*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*,
    525 F.3d 554 (7th Cir. 2008) ................................................................... 8

*In re Advanced Elecs., Inc.*,
    283 F. App'x 959 (3d Cir. 2008) ............................................................ 10

*In re Brooks*,
    383 F.3d 1036 (D.C. Cir. 2004) ...................................................... 6, 8, 9

*In re Kensington Int'l Ltd.*,
    368 F.3d 289 (3d Cir. 2004) ................................................................ 5, 9

*In re School Asbestos Litig.*,
    977 F.2d 764 (3d Cir. 1992) ....................................................... 7, 8, 9, 10

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ................................................................................ 9

**STATUTES**

28 U.S.C. § 144 ............................................................................................. 8

28 U.S.C. § 455 ..................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 53 ...................................................................................... 5, 8

# INTRODUCTION

Long on hyperbolic rhetoric but short on real substance, Crystallex's opposition primarily relies on two unfounded *ad hominem* attacks. *First*, Crystallex criticizes the VPs for having unsuccessfully sought relief from this Court before. But their win-loss record in prior appeals—which largely addressed jurisdictional issues—sheds no light on the merits here. *Second*, Crystallex casts the VPs' disqualification motion as a delay tactic. But that portrayal continues to ignore that in 2019, the Executive Branch blocked transfer of the VPs' assets in this country for the benefit of the Venezuelan people. In this context, it is hardly improper for the VPs to seek to ensure that any court-ordered sale of the crown jewel of Venezuela's state oil company be conducted in a lawful manner—and certainly not by a special master who has abandoned any appearance of impartiality.

Indeed, the VPs sought *to prevent* the problems here by asking to silently observe the special master's January 12 meeting. Had Crystallex and the special master agreed to that simple request—as was clearly required—no disqualification motion would have been necessary. Instead, they opposed it on the dubious ground that the VP's "mere presence" would "only chill discussion." App. 237a; *accord* D.E. 504. The public could reasonably interpret that to mean that the special master was not just attempting to impartially solicit the Executive Branch's views but—as he admitted—to lobby it to "cooperat[e] with" the sale process. App. 237a.

Crystallex therefore fails to overcome the VPs' showing that this Court will likely grant mandamus and that the balance of equities decisively favors a stay. And because the special master "will submit" his recommendation based on the *ex parte* meeting "on or before … April 30, 2023," D.E. 548 at 2, the VPs respectfully request that this Court act promptly (including, if necessary, by granting a brief administrative stay while it considers the stay motion).

## ARGUMENT

**I.    THE VPS AT THE VERY LEAST HAVE A REASONABLE CHANCE OF OBTAINING MANDAMUS RELIEF**

**A.1.**  Crystallex primarily dismisses the VPs' advocacy objection as mere disagreement with a purported factual "finding[]" that the special master only sought "'clarity'" from the Executive Branch. Opp. 9. That response is doubly flawed.

*First*, the question under 28 U.S.C. § 455 is not whether the special master *in fact* engaged in improper lobbying, but whether a *reasonable person might suspect* he did. Mot. 12-13. And given the "'objective facts'" here, Opp. 12, such suspicions are entirely reasonable. It is *undisputed* that the special master refused to let the VPs' counsel observe the meeting for fear that their presence would "chill discussion," App. 237a, which makes perfect sense if he was advocating against the VPs' interests, but no sense at all if he was merely asking the Executive Branch to "clarify its position," Opp. 2. Crystallex cannot obscure this obvious inference through vague, meritless insinuations about the VPs' alleged "bad-faith tactics" in

2

litigation, Opp. 11, as even it does not assert that they have ever disrupted any proceeding, let alone one conditioned on their attending silently.

*Second*, if this Court were to consider what was actually said in a meeting that neither the district judge nor the parties attended, the *only evidence* is that the special master *admitted* he intended to engage in "advocacy." App. 110a, 166a. While Crystallex, like the district court, *characterizes* that word as meaning that the special master was only seeking to ascertain the Executive Branch's position, that belated gloss is irreconcilable with the undeniable fact that the special master and his counsel previously described his objective as providing the Executive Branch with "his 'perspective on why OFAC cooperation with the Court's order is appropriate'" and on "'the benefits of the orderly sale process.'" Opp. 11 (brackets omitted). Again, *only* such lobbying would be "chill[ed]" by the VPs' presence. App. 237a.

Crystallex also faults the VPs for not seeking "an evidentiary hearing on what happened at the meeting." Opp. 11. But all agreed that the special master had lobbied the Executive Branch until his counsel tried to backtrack *during oral argument* on the disqualification motion. Mot. 10-11. Indeed, at that argument's outset, the district court concluded no "evidentiary hearing" was necessary given the absence of "any material factual dispute." App. 9a. That was because the only "fact dispute" had been the precise date on which the VPs "were told that the Special Master would not permit them to attend," D.E. 517 at 1, which had been resolved in

3

the VPs' favor when the special master confessed error, App. 151a. Accordingly, the VPs were the only ones "sandbagg[ed]" here, App. 66a, when the special master's counsel tried from the podium to spin his client's undisputed words and deeds shortly before the district court ruled from the bench.[1]

Lacking a viable factual theory, Crystallex alternatively claims that judicial officers can "'advocate[] to enforce a federal judgment'" "as a matter of law." Opp. 13 (brackets omitted). But not even the district court embraced that breathtakingly flawed theory, as no one could seriously contend the district judge himself could call OFAC (or the Treasury Department) and press for Crystallex to be granted a license in order to vindicate "the rule of law." Opp. 14; *see* Mot. 10; Pet. 14-15. In any event, the special master's lobbying was not done to enforce an existing court order, but to secure support for a new one. While the district court has answered *whether* Crystallex's judgment should be enforced, it has not decided *when* and *how* to do so given the risk that "sanctions could deter bidders" from participating—that is why it "directed [the special master] to solicit OFAC's views." Opp. 5; *see* Mot. 1-2. Yet rather than adhere to that factfinding role, the special master instead urged OFAC to "cooperat[e] with" the sale process by supporting the immediate launch. App. 237a.

---

[1] Thus, insofar as the district court did make any "factual finding[]" that the special master had only sought "clari[t]y," it would be "clearly erroneous," Opp. 2, as the VPs made plain in their motion, *see* Mot. 11-12.

4

That transformation from an impartial judicial officer to an advocate for Crystallex compels his disqualification.

**2.** Even setting aside this advocacy, Crystallex fails to justify the special master's decision to conduct the January 12 meeting on an *ex parte* basis. Contrary to its suggestion, the VPs do not contend that "*ex parte* communications alone require recusal," Opp. 15 (cleaned up), but that *this meeting* did by giving the special master personal knowledge of disputed evidentiary facts and undermining his impartiality due to his insistence on fact-gathering in secret, Mot. 13-14. Nor was the special master merely inquiring as to "the government's legal position." Opp. 16. Rather, he sought, in his own words, to "ascertain whether OFAC will issue a license or otherwise authorize the sale of the PDVH shares." App. 237a. Determining what OFAC intends to do in the future is a *factual* inquiry, not a *legal* one, especially when the purpose is to determine whether to launch the sale process in light of bidders' uncertainty about OFAC's position. Contrary to Crystallex's suggestion (Opp. 15), neither the text of Rule 53 nor any precedent permits such *ex parte* fact-gathering from *third parties*. After all, the district judge could not secretly call up the Treasury Department, ask if and when OFAC plans to approve the launch, and base his launch decision on the purported answer, thereby depriving the VPs of any ability "to adequately respond to" his characterization. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 310 (3d Cir. 2004).

Crystallex therefore retreats to dismissing this particular *ex parte* factfinding as "moot," Opp. 16, in light of the special master's April 18 revelation that he personally received unspecified *ex parte* "input" from "the Department of Justice on April 7," which is "being factored into" his recommendation, D.E. 548 at 2. But his receipt of *additional ex parte* input *exacerbates* the problem (especially if that input was not in writing). Moreover, the special master did not say that his recommendation would consider *only* the April "input," and even if he did, his prior *ex parte* meeting "may reasonably be expected to color" his interpretation of the April submission. *In re Brooks*, 383 F.3d 1036, 1046 (D.C. Cir. 2004). Even more problematic, his *ex parte* communications may have *influenced* the Executive Branch's actions to Crystallex's benefit at the VPs' expense.

3.   As to untimeliness and waiver, Crystallex largely reprises the district court's errors without offering any meaningful response to the VPs' points that the special master had previously told the district court and the parties that he would not engage in advocacy before abruptly changing gears on January 3; that he had declined to resolve whether they would be excluded from his meeting before then; that none of his prior *ex parte* meetings had involved factfinding for his recommendation on a pending judicial decision; that the VPs immediately objected to this meeting before it took place; and that neither taking six calendar days to lodge an objection nor citing § 455(a) exclusively can be plausibly described as strategic

behavior. Mot. 15-18; *see* Pet. 24-29. Instead, Crystallex doubles down, making the unsupported suggestion that the VPs' decisions were part of a grand strategy to disqualify "the judge." Opp. 18. Exactly the opposite is true. While the special master insisted that he and the judge must stand or fall together, the VPs *refuted* that position and explained why the facts supporting their motion did *not* call the judge into question. App. 145a-64a. Indeed, the VPs tried *to avoid* the need to disqualify the special master by notifying the district court of the problems *before* the meeting occurred, Mot. 16, just as they are now trying *to foreclose* any implications for the judge by seeking a stay *before* the special master submits his recommendation.

**B.** Crystallex fares even worse when it comes to the requirements for mandamus relief.

**1.** Crystallex never disputes that if the special master should have been disqualified under § 455, then the district court's refusal to do so is a clear and indisputable error justifying mandamus. Mot. 18-19. Nor could it. *See, e.g.*, *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 n.9 (3d Cir. 1993) (when a judicial officer's "impartiality could reasonably be questioned," a "refusal to disqualify" him is "an improper exercise of [judicial] discretion" warranting "mandamus"); Mot. 9.

**2.** Crystallex suggests that appeal from final judgment is "[o]rdinarily" adequate to challenge disqualification denials and that *In re School Asbestos*

*Litigation*, 977 F.2d 764 (3d Cir. 1992), recognized "a narrow exception" for § 455 claims against judges, *not* special masters.  Opp. 20.  But *School Asbestos* limited prior precedent to the narrow context of actual-bias claims under 28 U.S.C. § 144, and adopted a general rule that appeal from final judgment is inadequate for appearance-of-partiality claims under 28 U.S.C. § 455, because "the public's confidence in the judiciary … may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted."  977 F.2d at 776; *see id.* at 775-77.  Crystallex's unsupported attempt to distinguish appearance-of-partiality claims under § 455 against *special masters* thus makes no sense and would require splitting from the D.C. Circuit.  *See, e.g.*, *Brooks*, 383 F.3d at 1044.

In fact, "[t]o resolve" a circuit "conflict" over "the application of § 455 to special masters"—including the outdated Second Circuit case Crystallex cites—"the Supreme Court amended Fed.R.Civ.P. 53(a)(2) in 2003 to subject special masters to the requirements of § 455."  *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir. 2008).  Crystallex thus gets matters backwards in suggesting that the Supreme Court's *confirmation* that special masters must comply with § 455's requirements for judges was intended "to protect litigants, not public confidence" in the courts.  Opp. 20-21.  Crystallex emphasizes that Rule 53 permits parties "to waive any grounds for recus[ing]" special masters and to consent to their "*ex parte* communications."  Opp. 20.  But parties also can waive § 455(a) grounds

for disqualifying judges, 28 U.S.C. § 455(e), and "consent" to their "*ex parte* communications," *Kensington*, 368 F.3d at 311.  Whatever modest differences may exist in the respective waiver and consent rules, the critical point here is that "review after final judgment … cannot cure" the "harm to public confidence" caused by a special master's *violation* of § 455.  *School Asbestos*, 977 F.2d at 776.

Crystallex relatedly asserts that an impartial district judge's denial of a motion to disqualify a special master is sufficient "to protect 'public confidence' until a later appeal."  Opp. 21.  But a judge's trust in his handpicked "fellow member" of the judicial family "is unlikely to significantly quell the concerns of the skeptic." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 n.12 (1988); *see* Mot. 9, 12-13.  Just as a law clerk cannot "visit the scene of the crime, take fingerprints, interview witnesses, and report back to the judge about his findings" simply because the judge can "review the clerk's findings *de novo*," a judge's approval of disqualifying conduct by a "special master" does not eliminate the harm to the public's confidence in the judiciary.  *Brooks*, 383 F.3d at 1046.  If anything, giving judicial imprimatur to such misconduct *exacerbates* the injury.

3.  Crystallex speculates this Court will exercise "'discretion'" to deny the petition in light of the VPs' alleged "history of … abusing the judicial system." Opp. 21. But such focus on the parties' conduct is misplaced, as "the keystone of section 455" is "public confidence in the judicial system, both in the particular case and in

9

general." *School Asbestos*, 977 F.2d at 788. In any event, Crystallex's accusation of abuse is utterly unwarranted. Although this Court rejected the VPs' position in a single appeal in 2019 and determined that later appeals in this exceedingly complex, high-stakes matter were merely premature, *see* Pet. 6-10, it has *never* suggested that any of these appeals were abusive or otherwise improper.

**II.　THE EQUITIES STRONGLY FAVOR A STAY**

Crystallex barely addresses the equities, Opp. 22-23, confirming that those factors clearly favor a stay. Crystallex dismisses the irreparable injuries to the VPs and the public simply by reprising its flawed argument that appeal from a final sale order is an adequate remedy. Opp. 22; *see supra* at 7-9. And while it insists that preserving the status quo would cause some unspecified "harm," Opp. 22, it never denies that its attachment will bar the shares' transfer to others, its post-judgment interest will continue to accrue, and any valid sale after interlocutory review will satisfy the debt it is owed, Mot. 21.

Indeed, Crystallex admits a stay would be appropriate if the VPs "post[ed] a supersedeas bond." Opp. 3. But "[t]he purpose of a supersedeas bond is to preserve the status quo pending appeal," and Crystallex's attachment already does that by blocking the shares' transfer. *In re Advanced Elecs., Inc.*, 283 F. App'x 959, 966 (3d Cir. 2008) (cleaned up) (order prohibiting debtors from transferring shares "functioned in lieu of a supersedeas bond"). Accordingly, the only party engaged in

"obstructive behavior" here is Crystallex, whose only evident purpose for demanding a bond is to "to invent further obstacles" to meaningful review by this Court. Opp. 4, 22. And that review is particularly warranted now: This Court should not permit the crown jewel of Venezuela's state oil company to head toward the auction block without first addressing whether the process for doing so has been tainted by a judicial officer's misconduct.

## CONCLUSION

This Court should stay the special master's participation in the underlying proceedings pending resolution of the mandamus petition.

Dated: April 27, 2023

Respectfully submitted,

/s/ Hashim M. Mooppan

Hashim M. Mooppan
  *Counsel of Record*
Gregory M. Shumaker
Brinton Lucas
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
hmmooppan@jonesday.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, DC  20001
(202) 220-1100

*Counsel for Bolivarian Republic of Venezuela*

Nathan P. Eimer
Daniel D. Birk
Gregory M. Schweizer
Emily Sullivan
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL  60605
(312) 660-7600

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Ave.
New York, NY  10178
(212) 696-6000

Michael J. Gottlieb
Samuel G. Hall
WILKIE FARR & GALLAGHER LLP
1875 K St. NW
Washington, DC  20006
(202) 303-1000

*Counsel for Petróleos de Venezuela, S.A.*

*Counsel for CITGO Petroleum Corporation and PDV Holding, Inc.*

## COMBINED CERTIFICATIONS

1. Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2. This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2599 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Times New Roman), using Microsoft Word.

3. Pursuant to Third Circuit L.A.R. 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.

4. Pursuant to Third Circuit L.A.R. 31.1(c), Microsoft Safety Scanner version 1.387.808.0 has been run on this electronic file and no virus was detected.

Dated: April 27, 2023  
                 */s/* Hashim M. Mooppan  
                 Hashim M. Mooppan  
                 *Counsel for CITGO Petroleum*  
                 *Corporation and PDV Holding, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, this reply was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing. Judge Leonard P. Stark has also been provided with a paper copy of this filing by United Parcel Service overnight delivery to 717 Madison Place, N.W., Washington, D.C. 20439.

I further certify that four hard copies of this reply will be sent to the Clerk of Court by United Parcel Service overnight delivery.

Dated: April 27, 2023                          */s/* Hashim M. Mooppan
                                               Hashim M. Mooppan
                                               *Counsel for CITGO Petroleum*
                                               *Corporation and PDV Holding, Inc.*